UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PENNY  BENTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 1:12-cv-00945-DKL-WTL |
| CAROLYN W. COLVIN Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICAL REVIEW**

Plaintiff Penny Benton ("Benton") requests judicial review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner"),[1] denying Benton's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") disability benefits. For the reasons set forth below, the Commissioner=s decision is **REVERSED** and **REMANDED.**

I.      **BACKGROUND**

A.  **Procedural History**

Benton was found to be disabled in February of 2002.  On February 20, 2006, the Social Security Administration ("SSA") found Benton was no longer disabled and terminated her Disability Insurance Benefits ("DIB").  At Benton's request, a hearing

---

1 Carolyn W. Colvin became the Acting Commissioner of the SSA on February 14, 2013, while this case was pending.  Pursuant to Fed. R. Civ. P. 25(d), she is substituted for the former Commissioner Michael J. Astrue.

was held with an administrative law judge ("ALJ").  On July 14, 2009, ALJ Albert J. Velazquez affirmed the agency determination that Benton's disability had ended. Benton appealed this decision to the Appeals Council, which vacated and remanded the hearing decision.

The Appeals Council directed the ALJ to do the following:

- Obtain Medical Expert testimony from a psychiatrist to clarify whether Benton's mental impairment meets or equals a Listing;

- Further evaluate Benton's mental impairment in accordance with the five-step sequential process outlined in 20 C.F.R. 404.1520(a);

- Give further consideration to Benton's maximum residual functional capacity and provide the appropriate rationale with specific references to evidence in the record; and

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Benton's occupational base.

On September 20, 2010, a second hearing was held in Indianapolis in front of ALJ Velasquez.  On January 25, 2011, the ALJ again found Benton's disability ended on February 20, 2006.  The Appeals Council denied Benton's request for review on June 21, 2012, making the ALJ's decision final for purposes of judicial review.  Benton filed her Complaint with this court on July 11, 2012.

**B.  Factual Background and Medical History**

Benton, who was 40 years old at the time the SSA deemed her disability to have ended, initially alleged physical and mental impairments.  On remand, the Appeals Council directed the ALJ to further evaluate Benton's alleged mental impairment.

Benton has been diagnosed with schizoaffective disorder, a mental illness that features two conditions:  schizophrenia and an affective mood disorder such as major depression or bipolar disorder.2   She alleges the paranoia, anxiety and stress resulting from this condition preclude her from engaging in and sustaining basic work activity. Prior to the alleged onset of disability, Benton held jobs including retail cashier, waitress and sales clerk and most recently worked part-time as a library helper.

Benton was hospitalized twice with psychotic symptoms such as confusion, paranoia and delusions.  The first incident occurred in February of 2000 and she was diagnosed with paranoid schizophrenia.   On February 8, 2002, the Commissioner determined her to be disabled under Listing 12.04.  Benton was next hospitalized in May of 2005, also with a diagnosis of schizophrenia.  Following this hospitalization, Benton began treating with a psychiatrist, Dr. Nicolas.  On May 13, 2005, Dr. Nicolas diagnosed Benton with Psychotic Disorder and noted that she had discontinued her medication.  Dr. Nicholas switched her medication to Abilify in an effort to decrease the negative side effects.

On January 26, 2006, Benton again treated with Dr. Nicholas, who noted that she had stopped taking all antipsychotic medications because of negative side effects.  Dr. Nicholas prescribed Riperdal and Effexor XR.  On February 23, 2006, Benton received a medication review evaluation from Dr. Nicholas.  He noted that Benton was taking all medications and was doing well.  At the June 7, 2006, medication review, Dr. Nicholas noted that Benton was working part-time but he did not think she could keep it up.

2 *Web*MD, http://www.webmd.com/schizophrenia/guide/mental-health-schizoaffective-disorder.

Dr. Nicholas noted at the August 31, 2006, medication review that Benton seemed slightly depressed and complained of negative side effects. Dr. Nicholas increased her Risperdal dosage to help her with sleep and anxiety problems. On February 12, 2007, Dr. Nicholas noted that Benton was taking all her medications but reported negative side effects from Abilify. At the July 13, 2007, medication review Dr. Nicholas noted that Benton was taking all medications and was doing well.

On November 9, 2007, Dr. Nicholas noted that Benton had stopped taking her antipsychotic medications again because she believed they were causing heart palpitations and shortness of breath. On February 13, 2008, Benton reported to Dr. Nicholas that she had stopped taking Abilify due to the cost. Dr. Nicholas noted that she appeared bewildered at times and her insight was limited. On September 12, 2008, Benton reported to Dr. Nicholas that she had stopped taking Risperdal and was missing work. Dr. Nicholas noted Benton was displaying symptoms of paranoia and schizophrenia. At a follow-up visit on September 26, 2008, Dr. Nicholas noted that Benton was again taking her medications and her condition had improved.

Benton's mother attended her November 12, 2008, medication review and reported that she suspected Benton was not taking her medications correctly. Dr. Nicholas encouraged Benton to strictly comply with her medication schedule. On December 3, 2008, Benton reported that she was paranoid people were trying to break into her home. Dr. Nicholas noted her insight was impaired, but she otherwise displayed appropriate behavior.

Benton continued to undergo medication reviews with Dr. Nicholas approximately every other month through 2009 and monthly in 2010. On September 3, 2010, Dr. Nicholas completed a residual functional capacity assessment for Benton. He reported that Benton has moderate to severe schizophrenia with paranoid symptoms that have not responded well to medication. Dr. Nicholas noted she had Marked Limitations in 17 of the 20 functions.

## II.   LEGAL STANDARDS

### A.   Standard for Proving Disability

To be eligible for SSI and DIB, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate a disability claim, an ALJ must use the following five-step inquiry:

Step One:     Is the claimant currently employed;

Step Two:     Does the claimant have a severe impairment or combination of impairments;

Step Three: Does the claimant's impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;

Step Four:   Can the claimant perform his past relevant work; and

Step Five:   Is the claimant capable of performing any work in the national economy?

20 C.F.R. §§ 404.1520.  *See also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7ᵗʰ Cir. 2001).  The individual claiming disability bears the burden of proof at steps one through four.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the SSA has the burden at Step Five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience and functional capacity.  20 C.F.R. § 404.1560 (c)(2).

### B.  Standard for Judicial Review

An ALJ=s decision will be upheld so long as the ALJ applied the correct legal standard, and substantial evidence supported the decision.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Id.* (internal quotation omitted).   This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations.  Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner.  Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th 2004).  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict.  *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).  The ALJ is required to articulate a minimal, but legitimate,

justification for her decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7ᵗʰ Cir. 2004).  "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."  *O-Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citation omitted).

### III.   DISCUSSION

Benton claims the ALJ committed various errors that require reversal of the Commissioner's decision.  Specifically, Benton raises the following three issues:  (1) whether the ALJ erred at Step Three when he determined Benton's mental impairments did not meet the Listing 12.03; (2) whether the ALJ's credibility determination is patently erroneous; and (3) whether the ALJ's hypothetical to the vocational expert accurately reflects Benton's mental impairments.

### A.  Listing 12.03 (Schizophrenic, Paranoid and Other Psychotic Disorders)

Benton first argues there is substantial evidence to support her claim that her combined impairments met or medically equaled Listing 12.03.  She further argues the ALJ ignored evidence that supported a finding that her impairment met each of the "paragraph B"criteria.

Listing 12.03, which describes schizophrenic, paranoid, and other psychotic disorders, requires a level of severity tested by either the paragraph B or C criteria.  Benton's opening brief does not address paragraph C criteria, so the Court will confine its review to paragraph B as well.  The B criteria are satisfied where a claimant's mental

impairment results in two of the following: marked restriction in activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.03 (2010). In finding Benton's level of impairment in these areas was only mild to moderate, Benton asserts the ALJ improperly rejected the September 2010 Residual Functional Capacity Assessment completed by her treating psychiatrist. [Dkt. 20 at 30.] The Court agrees.

The ALJ stated that he gave "little weight" to the assessment by Dr. Nicholas because it was contradicted by the record. Specifically, the ALJ asserts that Dr. Nicholas' assessment of a GAF between 61-70 in July of 2010 indicates no more than mild limitations, rather than the "marked limitations" he assessed in September. The ALJ further opined that it is possible Dr. Nicholas' assessment was influenced by sympathy for Benton and cited as evidence the fact that his opinion departed "substantially from the rest of the evidence in the record." [Tr. at 24.]

After a thorough review of the medical evidence in the record, the Court disagrees with the ALJ's finding. Benton was consistently under the care of Dr. Nicholas, her treating psychiatrist, from 2005 through the date of the hearing. During this time, Benton maintained a diagnosis of schizophrenia. While there were periods of time that medication resolved her symptoms, the record reflects multiple instances where Dr. Nicholas altered her medication or dosage to ease side effects or increase its effectiveness and on several occasions he noted problems with the medication regime.

8

For example, on July 14, 2010, Dr. Nicholas documented that "the efficacy of the current medication regime is disappointing" and noted Benton's mood was "moderately restricted and slightly tearful" and that her thought content was "impoverished." [Tr. p. 514.] Dr. Nicholas made similar notations following two visits in February of 2010. [Tr. pp. 498 and 500.] With these documented concerns, the Court cannot reasonably find that Dr. Nicholas' assessment of marked limitations is a substantial departure from the record, as the ALJ found.

The Court also is hesitant to affirm the ALJ's finding that Benton does not meet a Listing in light of the fact that the ALJ clearly disregarded the remand order from the Appeals Council to obtain the opinion of a psychiatrist. Section 404.977(b) and Section 416.1477(b) of Title 20 of the Code of Federal Regulations provide that "[t]he administrative law judge shall take any action that is ordered by the Appeals Council." Here, the Appeals Council noted in its remand Order that the record was "unclear regarding the severity of the claimant's schizoaffective disorder as it affects her ability to sustain full time work at levels of substantial gainful employment." [Tr. at 38.] The Appeals Council ordered the ALJ to "obtain medical expert testimony from a psychiatrist to clarify whether the claimant's impairment meets or equals [Listing 12.03]." *Id.*

Dr. Steiner, the medical expert who testified at the hearing on remand, was a clinical psychologist, not a psychiatrist. Prior to the beginning of testimony, counsel for Benton questioned the ALJ about the discrepancy in qualifications and requested a supplemental hearing to take testimony from a psychiatrist. The request was

summarily denied by the ALJ.  [Tr. at 600.]  Benton's counsel reiterated his concern following Dr. Steiner's testimony and moved to strike the testimony on the grounds that Dr. Steiner was not a psychiatrist as ordered by the Appeals Council.  [Tr. at 632.] The ALJ denied the motion.

Finally, at the conclusion of the hearing, Benton's counsel again asked the ALJ to convene a supplemental hearing to take testimony from a psychiatrist on the issue of whether Benton met the a listed impairment.  The ALJ stated:  "I think that's already been addressed.  That's repetitive and declined – denied."   [Tr. At 641.]  Benton's counsel then asked the ALJ to recuse himself from the case and assign a new judge, to which the ALJ responded, "That request is denied, as well."  [Tr. at 624.]

Based upon the foregoing, the Court finds the ALJ's conclusion that Benton's impairments do not meet or equal the requisite severity under Listing 12.03 is not supported by substantial evidence and must be reversed.  The Court recommends the Commissioner assign the case to a different ALJ, as the hearing transcript and decision suggest "an unshakable commitment to the denial of this applicant's claim."  *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

## B.  Credibility of Benton

Benton next argues the ALJ's negative credibility determination was contrary to SSR 96-7p.  Social Security Ruling 96–7p requires the ALJ to consider the entire record and give specific reasons for the weight given to the claimant's statements.  The ALJ should consider:  the claimant's daily activities, the severity and intensity of the claimant's symptoms, precipitating and aggravating factors, medication, treatment, and

other measures to relieve the claimant's symptoms and their efficacy and side-effects, and any other factors relevant to functional limitations due to a claimant's symptoms. *See* SSR 96–7p; 20 C.F.R. § 404.1529(c)(3).

The ALJ generally asserts Benton's testimony was not credible because it was inconsistent with the RFC assessment.  Setting aside for the moment Benton's typical argument that this "backwards procedure of first determining her residual functional capacity and then determining credibility" is erroneous, the Court finds alternative reasons to fault the ALJ's conclusion.  The ALJ noted that Benton's testimony was "evasive or vague at times, and left the impression that the claimant may have been less than entirely candid."  [Tr. at 23.]  He further stated that "the claimant has not provided convincing details regarding factors which precipitate the allegedly disabling symptoms, claiming that the symptoms 'come and go.'" *Id.*  Yet a review of the transcript of the hearing reflects very little testimony from Benton concerning her alleged disability, and no questioning from the ALJ about her symptoms.

The ALJ began his questioning with a series of inquiries concerning an EEOC charge Benton filed against her former employer (a library) and continued through the termination of her employment from her part-time job as a library helper.  The Court notes the following excerpt from the transcript:

Q:     The – you said that the reason they fired you because you were sick.

A:     I got sick.

Q:     And so, how many days did you miss when you got sick?

A:     It depends.  It was maybe like a month.  One was a month.

Q:    You were off for a whole month?

A:    Yes.

Q:    Were you in the hospital?

A:    I was at home.

Q:    You were at home for a month?

A:    Yes.

Q:    And why were you at home for a month?

A:    Because I was sick.

Q:    And what was the, what was the sickness that you had?

A:    I was real tired and so I had to lay down.  I was real tired.

Q:    Okay.  All right.  Thank you, very much.  Counsel, any questions?

[Tr. at 611.]

Benton's counsel proceeded to elicit testimony concerning her treatment with Dr. Nicholas, symptoms of depression and anxiety and their negative impact on her ability to work full time.  The ALJ concluded his questioning of Benton with questions that established Benton lived with her mother and did not own a home.  While the ALJ noted in his opinion that Benton could not provide "convincing details" about her "allegedly disabling symptoms," at no time did the ALJ even inquire about Benton's symptoms.  On the contrary, the ALJ appeared to be more concerned about the retaliation claim Benton had filed against her former employer and whether she owned a home than her alleged mental impairments and how they affected her ability to work.

Although the ALJ is in the best position to determine the credibility of the claimant, the finding must be supported by the evidence and must be specific enough to enable the claimant and reviewing body to understand the reasoning. *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007).  Here, the ALJ generally states that Benton's testimony is not credible because it is inconsistent with the record evidence, but in reality the ALJ's examination of Benton at the hearing was so deficient there is no basis for that conclusion.  The Court concludes the ALJ's credibility determination is patently wrong and must be re-evaluated on remand.

### C.  <u>Hypothetical to Vocational Expert</u>

Finally, Benton argues the ALJ failed to give full consideration to all of her impairments in determining she is not disabled.  Specifically, Benton asserts the ALJ's hypothetical to the vocational expert ("VE") did not accurately describe the psychological limitations imposed by her schizoaffective disorder.  The ALJ's hypothetical limited Benton to work of a "simple and repetitive" nature. [Tr. at 634.] Benton correctly asserts that this limitation is insufficient to account for the moderate to severe limitations reflected in the record.  *See O'Connor–Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010).

In *O'Connor–Spinner*, the Seventh Circuit explained that "moderate difficulties normally should be reflected in" the RFC and corresponding hypotheticals to the VE. *O'Connor–Spinner*, 627 F.3d at 620 (emphasis added).  In that case, the ALJ determined that the claimant's depression caused moderate limitations in concentration, persistence and pace that should have been described to the VE.  The Court agrees that Benton's

limitations should likewise have been better described to the VE.  The Court will take it a step further and note that the ALJ erroneously placed too much emphasis on Benton's part-time work as a library helper to justify his finding of no disability.  Several times in the opinion the ALJ referenced Benton's employment at the library to illustrate his conclusion that she is able to maintain full-time employment.  He states:  "The fact that the impairment did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work."  [Tr. at 24.]  But at no point in the opinion did the ALJ explain how working for 20 hours a week – and ultimately being terminated for excessive absenteeism because she was unable to maintain that schedule – establishes she would be able to work 40 hours a week on a consistent basis.

The ALJ failed to grasp that having a job is not necessarily inconsistent with a claim of disability; the claimant "may have a careless or indulgent employer or be working beyond his capacity out of desperation." *Henderson v. Barnhart,* 349 F.3d 434, 435 (7th Cir.2003); *see Wilder v. Apfel,* 153 F.3d 799, 801 (7th Cir.1998).  It is reasonable to conclude that Benton's psychological impairment prevented her from maintaining a 20-hour a week job and likewise would prevent her from working full time.  Had the ALJ obtained testimony from a psychiatrist, as ordered by the Appeals Council, or fully described Benton's limitations to the VE, perhaps there would be more evidence to support his conclusion.  As the record stands, the Court finds there is not enough evidence to support his finding that Benton is not disabled and the case must be remanded for further proceedings.

## IV.   <u>Conclusion</u>

The ALJ's decision is being reversed primarily because he failed to properly obtain and evaluate the evidence. It is the job of the ALJ, not the court, to weigh the evidence, resolve conflicts, and determine whether the claimant is disabled.  *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1037 (E.D. Wis. 2004).   Therefore, the Commissioner's decision is **REVERSED** and **REMANDED** with instructions to: (1) follow the order of the Appeals Council and obtain the opinion of a psychiatrist to help evaluate whether Benton medically equals Listing 12.03; (2) consider all relevant medical evidence and testimony when assessing Benton' credibility; and (3) fully account for Benton's psychological impairment, including her consistent psychiatric treatment, when determining her RFC.  The Court further recommends the Commissioner reassign this case to a different ALJ.

SO ORDERED:

Date: 08/26/2013

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

15